UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DR. PHILIP BALDEO and 156 WEST 15TH
STREET CHELSEA LLC.,

             Plaintiffs,

      -against-

AIRBNB, INC., JOHN DOES ##1-10
AND JANE DOES ##1-10.

            Defendants.
_____

Case 20-CV


**COMPLAINT**

**<u>Jury Trial Requested</u>**

## <u>NATURE OF THE ACTION</u>

1.    Plaintiffs file this action and seek recovery for damages caused by Defendant Airbnb due to their unlawful rental of Plaintiff's property. Airbnb operates a massive unlicensed real estate brokerage service and commits common law fraud, negligence and deceptive and fraudulent trade practices, prohibited by New York General business law ("GBL") § 349 and NYC Administrative Code § 20-700.

2.    In fact, Airbnb's *unlicensed* brokerage service deliberately eliminates all involvement by licensed real estate and legal professionals who have legal and ethical obligations to exercise undivided loyalty to their clients when advising and assisting them in completing real estate rental transactions.

3.    Airbnb's operation substitutes and replaces licensed and trained real estate and legal professionals with its own *biased*, unlicensed and untrained employees and agents, which it employs to structure its Members' real estate rental

transactions using its own selfish, business choices, even to the deliberate detriment and damage of its Members and NYC property owners, including Plaintiffs.

4.    Airbnb acts unlawfully when this *unlicensed* real estate broker, lawyer and escrow agent demands all Members use the extensive real estate agreements that it drafted which eliminate, or purport to eliminate, most or all of its Members' legal rights and remedies, including the right to sue Airbnb in court for its unlawful conduct.

5.    Under New York law, including RPL § 442-d, Airbnb's real estate agreements, including its terms of service ("TOS" hereinafter) and rental agreements are invalid and void.

6.    Critically, by demanding that its Members pay commissions for performing real estate services which are normally performed by these three different fiduciary agents (i.e. real estate broker, lawyer and escrow agent), Airbnb is obligated to perform such services with the same competence and care that is required, expected and imposed upon the actual *licensed,* real estate and legal professionals.

7.    While Airbnb's TOS deny that it acts as an **"agent"** for its Members, including specifically denying that it acts as a "real estate broker," in fact, its conduct satisfies the definition of a real estate broker, escrow agent and legal agent (or lawyer) under New York law.

8.    In fact, Airbnb's TOS even admit, contradictorily, that Airbnb acts as a "*limited payment collection **agent**,*" which is simply Airbnb's euphemism for an "escrow agent."

9.    All three of these agents have separate fiduciary obligations.

10.  However, Airbnb ignores, disregards and/or fails to comply with these and many other legal and ethical obligations that govern the conduct of the real estate and legal professionals that its business model replace.

11.  Airbnb's TOS also deny that it functions as a "party" within the rental contracts that it drafts, interprets, enforces, and/or disregards.

12.  Airbnb is indeed a "party" within such agreements under which it claims to acquire many contractual rights and powers, including as, but one example, the absolute right and discretion to modify or cancel such agreements at any point.

13.  Yet, Airbnb not only falsely denies its actual "party" and "agency" status when drafting, interpreting, enforcing and/or disregarding all rental contracts that provide Airbnb is *supposedly* entitled to collect hundreds of millions of dollars in NYC real estate commissions, but further disregards and violates its fiduciary obligations in the process.

14.  Acting with the knowing and deliberate assistance of Defendant Airbnb, Miguel Guzman and other Airbnb Hosts leased apartments from Plaintiffs between 2014 and 2017 so that they could sublease them to Airbnb Guests using Airbnb's website and services.

15.  At least seven separate Airbnb Hosts used their Airbnb accounts to sublease apartments within the Subject Property to Airbnb Guests.

16.  The unlicensed brokerage, Defendant Airbnb, helped to accomplish these subleases by using its website and services to advertise, market and sublease Plaintiffs' real estate on hundreds of occasions without ever obtaining or even seeking Plaintiffs' consent.

17.   Because of Defendants' unlawful rental conduct between 2014 and 2017, the City of New York raided the Subject Property on four separate occasions.

18.   After each raid, the City issued Summons to Plaintiffs, which were prosecuted successfully at its Environmental Control Board (or "ECB" hereinafter), imposing fines approaching one hundred thousand dollars.

19.   In fact, even after learning about each of these first three raids and prosecutions caused by its own unlawful rental conduct, Airbnb continued renting out Plaintiff's apartments without legal right or consent;

20.   Immediately after OSE and NYC raided the Subject Property for the fourth time due to Defendant Airbnb's unlawful rental conduct, Plaintiffs removed all of the occupants from such building and has kept it vacant every since.

21.   After the fourth incident involving Defendant Airbnb's unlicensed and unlawful rentals of Plaintiffs' real estate, the City of New York filed civil and criminal prosecutions against Plaintiffs in New York State courts.

22.   OSE and NYC did not name Airbnb in any of these civil or criminal prosecutions, despite their identifying it as the worst law violator in all of the City of New York.

23.   Based upon information and belief, this failure to name Airbnb was the result of secret agreements made between Airbnb and OSE and NYC.

24.   In its advertising, including its website (www.airbnb.com) Airbnb fails to disclose most or any of the many illegal and unethical acts Airbnb commits with each and every NYC rental transaction when removing all licensed real estate and legal professionals and replacing them with unlicensed Airbnb employees.

25.  Despite its fiduciary duties to fully inform its Members of material facts, Airbnb failed to disclose substantial material facts, including the fact that (1) New York laws requires real estate agents and brokers, such as Airbnb and its employees, to obtain appropriate licenses to conduct lawful real estate transactions and collect real estate commissions; (2) that Airbnb has never acquired such broker's license or law license and fails to disclose that Airbnb lacks any legal right to demand or collect real estate commissions; (3) that it has no legal right to draft rental agreements for its New York Members, as it does for each and every Airbnb transaction; (4) that New York law permits only lawyers to draft rental agreements and leases; and (5) that Airbnb's rental agreements are void and unenforceable under New York law.

26.  Also, while Airbnb admits to perform services that it describes as those of a "*limited payment collection agent*" (or escrow agent), Airbnb fails to disclose that -- when a conflict arises between its Members, the Hosts (or "landlords") and Guests (or "tenants") – that Airbnb functions as an escrow agent and must withdraw.

27.  But instead, Airbnb ignores all of its ethical conflicts of interest when it demands and requires its Members to agree to the conflicted Airbnb corporation acting as their exclusive arbitrator/mediator of their disputes, while its TOS and other agreements purport to give Airbnb absolute discretion to cancel, modify and/or enforce its agreements as Airbnb desires.

28.  Nor does Airbnb disclose that -- despite the fact that it lacks any right to do so -- it regularly, secretly represents the legal interests of its Members and their landlords, in litigation, including, for example, in response to subpoenas served upon it by OSE and/or NYC law enforcement officials.

29.  Airbnb fails to disclose to its Members and their landlords, the many potential, serious legal risks that they create by using its online platform and services with regards to the City of New York's law enforcement operations.

30.  Under the "illegal hotel conversion" theory created by the Office of Special Enforcement ("OSE") and City of New York ("NYC"), for example, all persons (residents and visitors) are prohibited from renting NYC residential apartments or units for less than thirty consecutive days.

31.  Applying a strict liability theory in conjunction with its "illegal hotel conversion" theory and without proof of knowledge or actual culpability, OSE and NYC civilly and criminally prosecute NYC property owners and landlords of Airbnb Members, including Plaintiffs, in multiple tribunals for the acts of their tenants and other building occupants, including Airbnb Guests who Airbnb installed there.

32.  In fact, under OSE's *"illegal hotel conversion"* theory, NYC property owners, including Airbnb Members and Plaintiffs, who NYC formally prosecutes and convicts for violating its "illegal hotel conversion" theory, are prohibited from even contesting the constitutionality of NYC's *unlawful* prosecutions at its ECB.

33.  NYC's legal claim is that the Administrative Law Judges ("ALJs") at its Environmental Control Board ("ECB" herein) cannot lawfully consider any constitutional defects, doctrines or principles decided and/or announced by binding judicial authority, including even decisions of the United States Supreme Court and New York court of appeals.

34.  Without warning its Members or their landlords and with full knowledge of OSE's and NYC's baseless, unconstitutional legal theories and unlawful ECB prosecutions and convictions, Airbnb subleased Plaintiffs' apartments on hundreds of

occasions for less than thirty days without Plaintiffs' knowledge or consent and without acquiring the requisite real estate broker's license and/or law license.

35.  These dishonest and unlawful actions by Airbnb, and many others, make this unlicensed real estate brokerage service a deceptive, illegal, and fraudulent commercial operation.

36. As a direct and proximate result of Defendant Airbnb's unlawful conduct, Plaintiffs have suffered, and continue to suffer, substantial damages.

## JURISDICTION AND VENUE

37.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 over Plaintiffs' cause of action. The amount in controversy exceeds seventy-five thousand dollars ($75,000).  This court also has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

38.      Venue lies in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in New York County, City and State.

## PARTIES

39.     Plaintiff 156 W. 15th Street Chelsea LLC is a New York State corporation and the owner of a multi-unit apartment building located at 156 W. 15th Street, New York, New York, which is the "Subject Building" here.

40.     Plaintiff Philip Baldeo is a New York State resident who is the majority owner of shares in Plaintiff 156 West 15th Street Chelsea, LLC and, prior to September 30, 2014, was the owner of the Subject Building.

41.     Defendant Airbnb Inc. is a domestic corporation that was formed in Delaware, which lists its principal place of business as San Francisco, California.

42.     Defendants John Doe ##1-10 and Jane Doe ##1-10 are persons and/or other entities who or which are presently unknown to Plaintiffs but who facilitated and assisted Airbnb in subleasing the Subject Building unlawfully using Airbnb's website, legal and real estate services as described in this complaint, including those lawyers and other persons who assisted Airbnb in drafting or amending its false, deceptive and/or misleading "TOS" that Airbnb published on its website during the four or more years that Airbnb advertised, marketed and subleased Plaintiffs' apartments within its NYC building on 156 W. 15th Street (at least 2014 through 2017), including possibly, but not limited to, Roberta Kaplan, Darren Weingard and Belinda Johnson, Attorneys at law.

**FACTUAL ALLEGATIONS**

43.     Airbnb Members can be divided up into two distinct categories: (1) "Airbnb Hosts" (or "Airbnb Member Hosts") and (2) "Airbnb Guests" (or "Airbnb Member Guests").

44.     "Airbnb Hosts" are those persons (or entities) that use Airbnb's real estate and legal services offered through its website (i.e. www.airbnb.com) to advertise and lease or sublease apartments or other units for occupancy by Airbnb Guests;

45.     "Airbnb Guests" are those persons who have used Airbnb's services offered by its website (i.e. www.airbnb.com) to lease or sublease apartments or other units for occupancy offered by Airbnb Hosts.

46.     While "distinct," these two groups of Members (i.e. Airbnb Hosts and Guests) can overlap; in other words, an "Airbnb Host" may also be an "Airbnb Guest" (and vice versa) with regards to *different* apartments.

47.     Airbnb is a real estate broker as defined by New York law.  It has operated -- and continues to operate -- an unlicensed real estate brokerage service that used (and

uses) false, deceptive, and unlawful business practices to collect unlawful real estate commissions from its Members to the damage and detriment of Plaintiffs;

48.     NYRPL §440 defines a "real estate broker" to include "any person, firm, limited liability company or *corporation, who, for another and for a fee, commission or other valuable consideration ... rents, or offers or attempts to negotiate a ... rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate*."

49.     Airbnb's real estate related services include: (a) listing, marketing and leasing or subleasing the Subject Building by its Member-Hosts on its website for leased occupancy by its Member-Guests; (b) drafting all rental, escrow and other legal agreements between the Members and between Airbnb and its Members; (c) controlling and monitoring all of the Members' pre-contract communications and negotiations within its website's message page; (d) publishing reviews of the Hosts' and Guests' past real estate transactions and apartments; (e) setting suggested prices of apartment rentals; (f) collecting, holding and releasing of all rental monies paid by Member Guests to rent apartments offered by Member Hosts; (g) arbitrating or mediating any and all conflicts that arise in Airbnb transactions between its Members and/or between Airbnb and its Members and (h) deciding whether, when and how to respond to litigation, investigations and/or legal demands, such as subpoenas, relating to Members' rental activities, data and/or communications on its website, which Airbnb controls.

50.     Under the above-quoted NYRPL §440, Airbnb's above-described real estate brokerage services in New York meet the definition of services offered by a "real estate broker."

51.     Airbnb does not now have -- and has never had -- a real estate broker's

license within the State of New York.

52.     Despite such lack of any real estate broker's license, with regards to the subleasing real estate transactions involving Plaintiff's building, Airbnb charged real estate commissions from all of its Members.

53.     Because Airbnb was (and still is) an unlicensed real estate broker, its real estate commissions collected from Members for renting the Subject Property were unlawful.

54.     In fact, under New York law, a corporation (or person) that collects real estate commissions while acting as an *unlicensed* real estate broker is required to refund any unlawful commission charged and is subject to a statutory penalty that is equal to 400% of any real estate commissions charged.

55.     During the three-year period that preceded September 22, 2017, Airbnb unlawfully subleased multiple apartments within Plaintiffs' NYC apartment building which is located at 155 West 15th Street, New York, New York, which is the "Subject Building" discussed herein.

56.     In fact, Airbnb did this on hundreds of separate occasions.

57.     As a critical, deliberate part of its deceptive, fraudulent and unlawful practices and operation, Airbnb misrepresents to its Members the true character and quality of its legal status, rights and obligations within its extensive agreements including its "TOS," which Airbnb requires and demands that its Members accept.

58.     Such agreements govern, or purport to govern, its Members' subleasing transactions concerning the Subject Building, which Airbnb modifies and amends at will.

59.     As of July 22, 2019, Airbnb required its Members to agree to 138 single-spaced pages of mandatory, agreements that it had drafted and published on its website.

60.     These massive, online agreements purport to authorize Airbnb to engage in and/or render all of the real estate and legal services that its Members need and use to complete such transactions.

61.     Airbnb's efforts in leasing and/or subleasing the Subject Building were designed and intended to accomplish only one objective: i.e. to earn unlawful real estate commissions from all of its Members: i.e. on both sides of each and every rental transaction, including those involving the Subject Building;

62.     Further, under New York law [RPL § 442-d], an *unlicensed* real estate broker lacks any legal right or ability to draft valid real estate agreements on behalf of others;

63.     Even if the unlicensed Airbnb had secured the requisite real estate broker's license, however, its rental conduct here would be unlawful.

64.     New York law, RPLP § 443, requires real estate professionals to disclose their relationships to their clients-principals, whether representing the landlord, the renter or both, by completing a form mandated and designated as New York State Disclosure Form, DOS 1735-a ("New York State Disclosure Form for Landlord and Tenant").

65.     The language within this real estate form mandated by RPLP § 443, DOS 1735-a, describes the real estate broker disclosure law as follows:[1]

> *"New York State law requires real estate licensees who are acting as agents of landlords and tenants of real property to advise the potential landlords and tenants with whom they work of the nature of their agency relationship and the rights and obligations it creates."*

---

[1] See Exhibit A attached hereto (DOS 1735-a document that New York real estate brokers must execute with their clients.)

66. New York DOS #1735-a describes the landlord's agent as follows:[2]

**Landlord's Agent A landlord's agent is an agent who is engaged by a landlord to represent the landlord's interest. The landlord's agent does this by securing a tenant for the landlord's apartment or house at a rent and on terms acceptable to the landlord. <u>A landlord's agent has, without limitation, the following fiduciary duties to the landlord: reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account. A landlord's agent does not represent the interests of the tenant. The obligations of a landlord's agent are also subject to any specific provisions set forth in an agreement between the agent and the landlord</u>. In dealings with the tenant, a landlord's agent should (a) exercise reasonable skill and care in performance of the agent's duties; (b) deal honestly, fairly and in good faith; and (c) disclose all facts known to the agent materially affecting the value or desirability of property, except as otherwise provided by law**.

67. Simultaneously, as mandated by RPLP § 443, New York DOS 1735-a describes the "tenant's agent" as one who has an "undivided loyalty" in solely representing the tenant's (Airbnb Guest's) interest, which precludes representing the interests of the landlord (Airbnb Host) as follows:[3]

**Tenant's Agent**

A tenant's agent is an agent who is engaged by a tenant to represent the tenant's interest. The tenant's agent does this by negotiating the rental or lease of an apartment or house at a rent and on terms acceptable to the tenant. <u>**A tenant's agent has, without limitation, the following fiduciary duties to the tenant: reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account. A tenant's agent does not represent the interest of the landlord**</u>. The obligations of a tenant's agent are also subject to any specific provisions set forth in an agreement between the agent and the tenant. In dealings with the landlord, a tenant's agent should (a) exercise reasonable skill and care in performance of the agent's duties; (b) deal honestly, fairly and in good faith; and (c) disclose all facts known to the agent materially affecting the tenant's ability and/or willingness to per-form a contract to rent or lease landlord's property that are not consistent with the agent's fiduciary duties to the tenant.

---

[2] See page 1 of Exhibit A.
[3] See page 1 of Exhibit A.

68.     Under the above law (RPLP § 443), an Airbnb Host meets the test of being a "landlord" while an Airbnb Guest meets the test of being a "tenant."

69.     Consequently, under RPLP § 443, when Airbnb represents Members who are Hosts/landlords as a real estate broker it has the fiduciary obligation to represent them with an "undivided loyalty" and thus cannot simultaneously also represent the Member Guests/tenants -- at least, not without satisfying the exception created for dual representation within RPLP § 443, requiring the provision of informed consent to both sides of each transaction as documented by processing the requisite New York Form DOS 1735-a.

70.     If a licensed New York real estate broker wishes to represent both sides (or engage in a "dual agency") on some real estate rental transaction, under RPLP § 443, the broker must obtain their informed consent in writing as DOS 1735 explains:[4]

> **Dual Agent**
> A real estate broker may represent both the tenant and the landlord if both the tenant and landlord give their informed consent in writing. In such a dual agency situation, the agent will not be able to provide the full range of fiduciary duties to the landlord and the tenant. The obligations of an agent are also subject to any specific provisions set forth in an agreement between the agent, and the tenant and landlord. An agent acting as a dual agent must explain carefully to both the landlord and tenant that the agent is acting for the other party as well. The agent should also explain the possible effects of dual representation, including that by consenting to the dual agency relationship the landlord and tenant are giving up their right to undivided loyalty. A landlord and tenant should carefully consider the possible consequences of a dual agency relationship before agreeing to such representation. A landlord or tenant may provide advance informed consent to dual agency by indicating the same on this form.

71.     Based upon information and belief, when engaging in dual agency when

---

[4] See page 1-2 of Exhibit A.

subleasing the Subject Property on hundreds of occasions, Airbnb did not comply with or obtain the above-described written informed consent disclosures required for lawful *dual agency* representation by a real estate agent/broker, including the execution of form DOS 1735-a.

72.     Further, as a critical part of its unlicensed real estate brokerage scheme and operation to collect unlawful real estate commissions from its Members, Airbnb demands that all Guests must deliver all of the rental funds directly to Airbnb to hold and release to the Member Hosts upon satisfaction of their promised production of the apartments subleased for occupancy;

73.     By handling these funds, Airbnb in fact acts and performs as an "escrow agent," as such term is defined by common law.

74.     Airbnb's online agreements describe itself as acting as a "*limited payment collection agent.*"

75.     Airbnb's services in acting as the "limited payment collection agent" match the services offered by an escrow agent as defined by New York law.

76.     New York law imposes fiduciary duties upon escrow agents, including Airbnb who in fact acts in such capacity.

77.     However, Airbnb fails and refuses to comply with these fiduciary duties when it falsely denies that it is even such an (escrow) agent;

78.     Airbnb also unfailingly represents both sides of each and every Airbnb real estate rental transaction, including those where the parties and/or Airbnb have developed actual conflicts of interest.

79.     While admitting its escrow agent role (euphemistically described as the "limited payment collection agent"), Airbnb's TOS fail to disclose its many conflicts of

interests to its Members;

80.     Further, under New York statutory and common law, including Judiciary Law § 484 and § 495(3) only a person who is licensed as a lawyer may draft a rental agreement or other legal contracts on behalf of others.[5]

81.     Airbnb corporation is not licensed to practice law in the State of New York;

82.     In fact, because Defendant Airbnb is a corporation and not a natural person it cannot even obtain a law license within the State of New York;

83.     Consequently, non-lawyer Airbnb corporation cannot lawfully draft leases, rental agreements, or other legal agreements, on behalf of others, including its own Members.

84.     By representing the legal interests of its Members in drafting the TOS that govern, or purport to govern, their own legal rights and obligations when drafting the rental agreements of its Member-Clients and in representing Members in litigation against others including NYC government, including deciding whether and how to respond to subpoenas served by NYC government and others, Airbnb is acting as the lawyer for its affected Members.

85.     Because Airbnb acts as a lawyer in fact for its Members, it has the same ethical and legal obligations as any licensed New York lawyer to exercise reasonable and

---

[5] As the 4th Department explained in Matter of Garas, 65 A.D.3d 164, 881 N.Y.S.2d 744, 2009 NY Slip Op 4841 (4th Dept., 2009):  "Judiciary Law § 484 provides in relevant part that "[n]o natural person shall ask or receive, directly or indirectly, compensation . . . for preparing deeds, mortgages, assignments, discharges, leases or any other instruments affecting real estate . . . unless he [or she] has been regularly admitted to practice, as an attorney or counselor, in the courts of record in the state . . . ." Similarly, Judiciary Law § 495 (3) provides that "[n]o voluntary association or corporation shall ask or receive directly or indirectly, compensation for preparing deeds, mortgages, assignments, discharges, leases, or any other instruments affecting real estate . . . ." The purpose of the prohibition against the practice of law by other than an admitted attorney is to protect the public "against the dangers of legal representation and advice given by persons not trained, examined and licensed for such work" (*Spivak v Sachs,* 16 NY2d 163, 168 [1965])."

competent legal services.

86.     Under New York State Rules of Ethics for lawyers (Part 1200 Rules of Professional Conduct),[6] Rules 1.7 and 1.8 prohibit New York lawyers from representing clients with conflicting interests.

87.     They are similarly prohibited from representing clients when the lawyer's professional judgment may be impaired by the lawyer's own financial, business, property, or other personal interests under these Rules of Ethics.

88.     These Rules prohibit them from entering into business transactions with clients who reasonably expect the lawyer to simultaneously represent the legal interests of the client.

89.     These Rules also prohibit lawyers from making any agreement prospectively limiting the lawyer's liability to a client for malpractice;

90.     These Rules also prohibit lawyers from settling a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking, and is given a reasonable opportunity to seek, the advice of independent legal counsel in connection therewith.

91.     A New York lawyer shall also not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent.

92.     In fact, Airbnb violates all of these above-described ethical and legal obligations and limitations imposed upon New York lawyers.

93.     Despite performing the services of the escrow agent, real estate broker,

---

[6] See New York Rules 2017 found on and downloaded from New York State website on September 15, 2019 (http://ww2.nycourts.gov/attorneys/clientattorneyrel.shtml)

and lawyer, Airbnb's TOS falsely deny that it functions as any one of these types of agents.

94.    Such denials lack merit.

95.    In fact, Airbnb meets the legal definitions of all three of them.

96.    In fact, like real estate brokers, lawyers and escrow agents are also fiduciary agents, who owe their clients a duty of undivided loyalty.

97.    When an actual conflict exists or develops, no fiduciary agent may continue to act in a dual agency relationship, and much less a *three-way* contractual relationship, as here, since Airbnb also represents *itself* as a party within its requisite TOS and other Airbnb agreements with its Member Guests and Hosts; rather, the fiduciary agent must withdraw from representing all such parties.

98.    Under New York law, if a fiduciary agent breaches its duty, the agent forfeits the right to receive payment, regardless of whether damages were incurred.

99.    In fact, in addition to "undivided loyalty," New York law imposes numerous duties upon fiduciaries including the duty to disclose all material facts relating to the transaction known to the agent, including any conflicts of interests;

100.    Airbnb fails to comply with its fiduciary obligations when it fails to obtain the requisite informed consent disclosures required by New York law;

101.    By *falsely* and wrongly disclaiming its actual agency and fiduciary statuses, Airbnb seeks to ignore and evade its actual legal obligations, maintain its false and deceptive claim that it is lawfully entitled to act as all of its Members' real estate broker, lawyer and escrow agent simultaneously.

102.    Under New York law, a fiduciary agent cannot evade its/her/his fiduciary duties by merely disclaiming them in some agreement.

103.    Airbnb attempts to do just that here (i.e. evade them) within its (invalid) online agreements.

104.    Airbnb's ever-present dual agency representation prevents this fiduciary agent from demonstrating absolute fidelity and loyalty to any of its Member-Principals;[7]

105.    Deficiently, Airbnb's TOS do not require it to withdraw from real estate transactions that involve actual conflicts of interests between its Members, or between Airbnb and its Member(s).

106.    In fact, Airbnb's online agreements do not even provide or recognize any procedure or mechanism, which would allow it to withdraw and involve some other unconflicted party to handle the services as real estate broker, lawyer and/or escrow agent or mediator/arbitrator.

107.    Airbnb's online agreements purport to authorize Airbnb to use its "sole discretion" on behalf of its Members relating to their real estate and legal transactions, including, for example, when deciding whether, how and when to respond to litigation, as well as legal demands from State, federal and local governments such as responding to the service of subpoenas for its Members' records.

108.    Given the manner in which Airbnb has constructed its online mandatory agreements, Airbnb denies, or purports to deny, its Members any and all rights and ability to respond to the legal demands for their data made by federal, State, NYC a and OSE officials.

---

[7]As the Bible explains, "*no man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other.*" See Matthew 6:24 from the King James version of New Testament (part of the Sermon on the Mount).

109.    While acting as the Members' lawyer, Airbnb violates its fiduciary duties owed to its Members when it mandates its Members to agree to its self-serving and invalid TOS and other agreements that purport to grant Airbnb the exclusive and absolute right and discretion to enforce, modify or terminate its agreements at will and even without notice;

110.    Airbnb violates its fiduciary obligations as a lawyer by drafting its TOS that purport to deny its Members their legal rights and/or remedies against Airbnb in advance, prohibiting them from suing Airbnb for damages under any and all legal reasons, including even for deliberate fraud, deceptive trade practices and/or breach of its fiduciary duties;

111.    Airbnb also fails to disclose to its Members that Airbnb is purporting to deny them most legal rights and remedies under its unlawful, void, and invalid agreements and fails to obtain informed consent as a matter of course.

112.    Airbnb's online agreements recognize Members' right to file arbitration proceedings against Airbnb but then, in its deliberate effort to defeat and destroy the value and adequacy of such arbitration remedy, Airbnb imposes numerous restrictions and limitations and restrictions thereon, which severely limit, or purport to severely limit, the scope of any possible recovery against Airbnb, making such arbitration remedy to be wholly inadequate, deficient and illusory with regards to the correction of the actual damages that Airbnb causes its Members.

113.    Airbnb's online agreements deny *incorrectly* that it is a "party" to the rental agreements between its Members.

114.    Because Airbnb's mandatory, online agreements grant, or purport to grant, substantial legal rights and remedies upon Airbnb regarding the rental

agreements created by its Members, Airbnb is indeed a "party" to such agreements.

115.    As Airbnb has designed, intended, and executed its business model and operations, Airbnb eliminated and prevented any and all involvement by licensed real estate and legal professionals who are not employed by and/or beholden to Airbnb;

116.    New York law requires the persons who assist New Yorkers to conduct their real estate transactions to be licensed and trained real estate and legal professionals with an understanding of their fiduciary obligations;

117.    As a matter of deliberate design, Airbnb's business model subverts and defeats all of these ethical and legal obligations which are designed to protect the parties, including its Member, when executing complex real estate transactions;

118.    Airbnb replaces these protective professionals with only its biased, unlicensed employees and agents who are paid by and beholden to Airbnb;

119.    Further still, despite multiple, inherent conflicts of interest, Airbnb's online agreements purport to appoint the biased, beholden Airbnb employees to act with final and absolute discretion when acting as mediators and/or arbitrators to resolve all Member disputes involving or relating to the mandatory rental agreements drafted by Airbnb;

120.    By unilaterally controlling all of the legal and real estate services normally performed by real estate and legal professionals -- namely, the real estate broker, lawyer, escrow agent – as well as requiring the parties to grant Airbnb total control over the rental funds paid by the Guests for the Hosts -- the *biased* Airbnb gains absolute and *exclusive* control over all of its Members' legal and real estate transactions conducted over the Airbnb platform.

121.    Airbnb gives itself this absolute control without assuming any actual legal obligations itself.

122.    Yet, when challenged by government regulators and others, Airbnb has repeatedly, falsely claimed that its Members maintain complete control over their own Airbnb rental transactions;

123.    In actuality, as described by its mandatory agreements demanded from Members -- its online agreements are entirely one-sided in favor of Airbnb's legal interests when they purport to expressly allow Airbnb absolute discretion in the enforcement, modification or termination of each and every Airbnb rental transaction.

124.    These invalid agreements are thus illusory;

125.    Besides representing both sides of each and every conflict between its Members involving Airbnb agreements and transactions, Airbnb simultaneously represents its own conflicting, legal interests as a party in each transaction, including disputes involving its own rental agreements that it drafts and requires of all Members;

126.    Such simultaneous representation of *its own* contractual interests as a party to the agreements and transactions along with representing both conflicting interests of Airbnb Hosts and Guests on each and every rental agreement, acting as an unlicensed real estate broker, escrow agent, lawyer for both sides as well as the biased mediator/arbitrator regarding all Member disputes, Airbnb consistently, inevitably confronts multiple conflicts of interests in each and every Airbnb transaction.

127.    Airbnb commits fraud and deceptive trade practices with regards to their Members and/or their landlords, including Plaintiffs, who entered into long-term leases with Airbnb's Hosts under false pretenses.

128.    Airbnb's fraud and deceptive trade practices involve this unlicensed real

estate broker subleasing Plaintiffs NYC apartment under its false representations that it is engaged in a lawful business, concealing or failing to disclose its failure or refusal to perform its many legal and ethical obligations as a fiduciary agent (real estate broker, lawyer and escrow agent) as well as its many conflicts of interest;

129.   Furthermore, as part of its fraud and deceptive trade practices and despite its fiduciary duties, Airbnb fraudulently conceals or withholds from its Members and their landlords, including Plaintiffs, substantial material factual and legal information regarding OSE's and New York City's (unlawful) "law enforcement" practices that create extraordinary threats of harm and injury when renting out NYC apartments for less than 30 days, including the following;

a.    That the OSE and NYC claim that under its (baseless) "illegal hotel conversion" argument that all "*short-term rentals*" (i.e. less than 30 consecutive days) of NYC apartments are unlawful, including all of those that Airbnb and its Members complete using its website and real estate and legal services; in fact, OSE's and NYC's legal arguments lack any legal merit but nonetheless succeed because of government corruption at multiple levels;

b.    That – in violation with the State and federal Constitutions, as well as the NYC City Charter – the OSE and NYC routinely and deliberately employ an illegally constituted police force made up of plainclothes, badge-carrying police officers (NYPD), fire officers (FDNY and officers from the Department of Buildings ("DOB"), who join forces to enter NYC buildings without search warrants or valid consent, requesting or demanding entrance to investigate fire or building safety conditions and seeking to intimidate, frighten and manipulate the building occupants so that they will allow them to (unlawfully) enter the building and apartments so that they may question the occupants and take photographs related to their occupancies.

c.    That, during their illegal entries and searches, OSE and NYC officers gather written documents, photos and/or statements in order to investigate and/or prosecute NYC property owners including Airbnb Members and their landlords, including Plaintiffs, without legal basis at NYC's lawless ECB administrative tribunal;

d.    That, at its ECB, under a line of baseless ECB decisions (rendered

by anonymous persons who need not even be lawyers), starting with NYC v. Mige,[8] the City of New York holds NYC property owners, including Airbnb Members and/or their landlords, including Plaintiffs, to be strictly or vicariously liable for the actions of the occupants of their property.

e.      That, in violation with due process and other laws, NYC prohibits NYC property owners including Airbnb members and their landlords, including Plaintiffs, from contesting the many constitutional defects with the unlawful ECB prosecutions to obtain unlawful ECB opinions/decisions and impose massive, unlawful fines.

f.      That, after OSE and NYC obtain these unlawful ECB decisions and fines from NYC property owners including Airbnb Members and their landlords, including Plaintiffs, they then seek to bootstrap such lawless ECB decisions into being treated as conclusive evidence in New York Supreme Court against NYC property owners including Airbnb Members and their landlords, including Plaintiffs; NYC does this by using doctrines of collateral estoppel, res judicata and/or issue preclusion based upon the ECB decisions within these Nuisance lawsuits.

g.      That, Airbnb maintains a secret, unlawful relationship of providing cooperation and assistance with OSE and NYC agents and -- without the lawful or valid consent or knowledge of Members or their landlords -- and frequently, voluntarily produces data about Airbnb Members and their landlords upon request despite the lack of any valid search warrant and despite Airbnb lacking any valid consent or even probable cause to believe these OSE or NYC agents possess any lawful right to demand or use this data within their various unlawful administrative and judicial proceedings.

h.      That, NYC and OSE are able to defend its unpersuasive "illegal hotel" conversion theory at its ECB, criminal and Supreme Court only because of their undue influence and/or corruption of the prosecuting lawyers, OSE officers, Administrative Law Judges at the ECB, State Court Judges in State supreme and  criminal courts, that NYC and OSE employ and/or control in violation with State, NYC and federal laws.

130.    Since early 2013, Airbnb has been fully aware of the above-described

unlawful and corrupt practices by OSE and NYC within their "illegal hotel" investigations

---

[8] See NYC v. Mige (ECB Appeal No. 1200383 August 30, 2012) ("*The Board notes that as owner of the building, Respondent is responsible for the violations occurring on its property, notwithstanding that it did not create, have knowledge of or consent to same.  That Respondent immediately corrected the NOVs does not relieve it from liability thereunder.*").

and prosecutions.[9]

131.    Because the City of New York hold NYC property owners strictly liable for the rental conduct of their tenants, Airbnb's fraud upon its own Members inflicts a direct impact upon the legal rights and obligations of NYC property owners, including Plaintiffs, requiring them to defend such conduct in court and other tribunals and pay the fines and penalties for such unlawful rental conduct; Airbnb's fraud upon its Members thus constitutes a direct fraud upon their landlords, including Plaintiffs, who are cited, prosecuted and harmed by its unlawful conduct.

132.    Airbnb's unlawful or otherwise unjustified conduct in disregarding its fiduciary obligations in order to collect illegal real estate commissions from hundreds of short-term rental transactions involving Plaintiffs' apartment building has caused the OSE and NYC to intervene and prosecute Plaintiffs repeatedly in civil and criminal proceedings and has severely harmed and damaged Plaintiffs here.

133.    As a direct and proximate result of Airbnb's deceptive and unlawful conduct, enterprise, and scheme, the OSE previously raided Plaintiffs' Subject Building on four separate occasions between August 28, 2014 and September 22, 2017.

134.    As a direct and proximate result of Airbnb's deceptive, fraud and unlawful conduct, enterprise and scheme, the City of New York has prosecuted and continues to prosecute Plaintiffs under various criminal and/or civil claims in multiple forums.

---

[9]As first documented and detailed within a 200 page memorandum of law (with 500+ pages of exhibits) filed on or about March 20, 2014 in order to support a motion to intervene by Attorney Kent Gubrud (on behalf of Kimberly Freeman) within the Albany Supreme Court case that Airbnb had earlier filed against the New York Attorney General ("NYAG" hereinafter). See Airbnb v. NYAG (Albany Supreme Court Index #005593/2013). Attorney Kent Gubrud documented these unlawful practices and policies again in a similarly sized, comprehensive Motion to Dismiss with Memorandum, Affirmation and Affidavits and Exhibits (NYSCEF Doc. ##116-19 and ##121-186) filed within the case of NYC v. City Oases et al in (New York Supreme Court index # 451997/2014) along with three Motions to Dismiss and other submissions in NYC v. Philip Baldeo et al (New York County Supreme Court Index No. – court submissions that were disclosed to Airbnb's lawyers.

135. So far, Airbnb's deceptive, fraudulent and unlawful conduct has helped to motivate, create or facilitate ten (10) separate legal prosecutions or adjudications against or involving Plaintiffs in different New York administrative and judicial tribunals, including the ECB, Supreme Court, and criminal court as follows:

| # | Type of case | Tribunal | Plaintitff(s) | case# | Date filed | Result |
|---|---|---|---|---|---|---|
| 1 | ECB pros. | ECB | Philip Baldeo | 35096480P +2 | 08/29/14 | $8K fine |
| 2 | ECB pros. | ECB | Philip Baldeo | #35151142L +2 | 10/15/14 | $2400 fine |
| 3 | ECB pros. | ECB | 156 W. 15th St. | #35220647N +2 | 03/07/17 | $57,000 fine |
| 4 | ECB pros. | ECB | 156 W. 15th St. | #35292709M | 09/22/17 | $20,200 |
| 5 | ECB Appeal | ECB appeal part | 156 W. 15th St. | #35220647N +2 | 06/08/18 | affirmed |
| 6 | ECB Appeal | ECB appeal part | 156 W. 15th St. | #35292709M | 06/11/18 | affirmed |
| 7 | Article 78 | NY Cty Sup Ct | 156 W. 15th St. | Index 153126/2019 | 03/25/19 | pending |
| 8 | Nuisance | NY Cty Sup Ct | all 3 Plaintiffs | Index 450126/2018 | 01/22/18 | pending |
| 9 | Judg enforce | NY Cty Sup Ct | 156 W. 15th St. | Index #450192 | 02/19/19 | on hold pending |
| 10 | criminal case | NYC Criminal ct | 156 W. 15th St. | 4434646926 +9 | 09/22/17 | 3 dismiss; mot dismiss pend |

136. As a proximate and direct cause of Airbnb's unlawful conduct, the City of New York has imposed and recorded a *lis pendens* upon the Subject Building during the Supreme Court litigation that prevents Plaintiffs from selling, mortgaging or renting such property to others, causing substantial financial losses and damages.

137. Having to defend against all of the substantial, above-described litigation caused by Airbnb's unlawful rental conduct, rather than risk further civil and/or criminal prosecutions from further Airbnb rental conduct, Plaintiffs have elected to keep the Subject Building vacant, at least to the conclusion of the above litigation, causing Plaintiffs to lose substantial rental income.

138. Further, because of Airbnb's above described rental conduct here, the mortgage holder on the Subject Building dramatically increased the interest rate and threatened to foreclose such mortgage because it considered OSE's and NYC's lawsuit in New York County Supreme Court to be tantamount to a "default" under such mortgage

agreement; such dramatic increase of this interest amount as well as the threat of foreclosure compelled Plaintiffs to pay off such mortgage by using other assets, causing significant costs and damages.

### First Cause of Action
### Negligence (Common law)

139.    Plaintiffs reallege all of the facts alleged above in paragraphs 1 to 138.

**140.**    Because of the Defendant Airbnb unlawful rental conduct, it was foreseeable that the OSE and NYC would and did prosecute and convict Plaintiffs for Defendants in renting out the Subject building on multiple occasions (for less than thirty days);

**141.**    Nonetheless, Airbnb negligently engaged in such rental conduct again and again, which was a proximate cause or contribution to Plaintiffs' foreseeable injuries described herein.

### Second Cause of Action
### (Deceptive Trade Practices Act GBL §349 and
### NYC Administrative Code § 20-700.)

142.    Plaintiffs reassert all of the allegations above within paragraphs 1 through 137 as if fully set forth herein.

143.    Plaintiff-landlords qualify as "consumers," as defined by and described within GBL § 349.

144.    As part of its deliberate design to evade its legal obligations as a de facto real estate broker, lawyer and escrow agent, Defendant Airbnb -- while in fact acting unlawfully as an unlicensed real estate broker, escrow agent and lawyer and "party" to the unlawful legal agreements that it had drafted and required of its Members in order to collect unlawful real estate commissions -- has negligently made numerous false,

misleading and deceptive statements and/or omissions of material facts with regards to its legal status with regards to its unlawful rental of apartments within the Subject Building, including, but not limited to, its denial of agency status and thus its fiduciary obligations.

145.    As part of Airbnb's deceptive and unlawful business operations, Airbnb subleased Plaintiffs' apartments on hundreds of occasions using its unlawful brokerage and legal services;

146.    Defendants' deceptive and unlawful business actions caused Plaintiffs substantial damages and injury.

**Third Cause of Action**
**(Fraud)**

147.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1-142 as though fully set forth herein.

148.    As an integral part of Airbnb's fraudulent business operations, on hundreds of separate occasions, Airbnb and its Members leased and subleased Plaintiffs apartments under false pretenses and without their knowledge or consent using Airbnb's unlawful brokerage and legal services, permitting Airbnb to collect unlawful real estate fees and/or commissions from all of its Members.

149.    Plaintiffs justifiably relied upon Airbnb's false representations, including omissions of material facts, when leasing its apartment units to tenants who failed to disclose and affirmatively concealed that they were actually Airbnb Hosts who planned to use such apartments for Airbnb rentals.

150.    Despite the fact that Airbnb was specifically aware that the Subject Building had been raided by OSE and NYC on one or more prior occasions as a direct

consequence from its own short term rentals, Airbnb made no effort to notify, inform or obtain the consent of its Members' landlords -- i.e. Plaintiffs-- before it subleased their apartments without a broker's license in order to unlawfully collect real estate commissions.

151.     As a proximate cause of Defendants' fraudulent and deceptive conduct in violation of common law as well as GBL § 349 and NYC Administrative Code § 20-700, Plaintiffs were damaged by, inter alia, the imposition of numerous fines and penalties, NYC's lis pendens that prevented Plaintiffs from encumbering and/or transferring such building, the cost of legal services needed to contest or challenge the multiple criminal and civil prosecutions at the ECB, Supreme Court and in criminal court, Plaintiff Philip Baldeo's diminished reputation, mental anguish, pain and suffering and the tarnishing of his business reputation.

152.     Plaintiffs are therefore entitled to recover such damages from Airbnb and the other Defendants due to their unlawful conduct, as well as being entitled to obtain injunctive relief, attorney fees, costs, and litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief pursuant to each and every cause of action set forth in this Complaint as follows:

a.  For an award of actual, statutory, and common law damages
to be determined at trial;
b. Punitive damages;
c. Pre- and post-judgment interest;
d. Attorney's fees, expenses, and court costs; and
e. Such other and further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated: New York, New York
September 21, 2020

Law Office of Kent Gubrud, P.C.

_____
By: Kent L. Gubrud, Esq.
42 Broadway Suite 12-125,
NY, NY 10004
Phone: (212) 968-8818
Email: law@depose.net